Feel free to begin whenever you're ready. Good morning. My name is Russell Pritchett and may it please the court, I'm appearing here on behalf of the petitioner, Mr. Pedro Aguilera-Montero. In this case, Mr. Montero has made four equal protection arguments and we believe that the government has not offered a rational basis for the distinctions in any of those four situations. First, Mr. Montero has argued that there is no logical reason for the effect of a pardon not to be the same in deportation and inadmissibility proceedings, such as the BIA found expressly in Matter of H cited in the brief. The government has not offered any reason to the contrary. In this case, citing Matter of H, the BIA wrote that it's conceivable, but not certain, that Congress would have intended deportable and inadmissible aliens to receive equivalent treatment under an executive pardon. And we believe that if the constitutional arguments are not accepted in this case, which we have made, that this case would be appropriate for a remand to the BIA to make an actual determination on that issue. The second equal protection ground offered in this case is that Mr. Montero has argued that there is no rational basis under INA Section 237 waiver to apply to an aggravated felon, such as someone who has been convicted of possession with intent to distribute, but not to apply to a person such as Mr. Montero, who had a lesser simple possession offense, which is not an aggravated felony. The government has not offered any rational basis for that distinction, but has relied only on the Matter of Suh, S-U-H, decision of the BIA, which we believe, for reasons stated in the brief, is contrary to the clear language of Section 237, which appears to apply the waiver to any alien who is an aggravated felon. Counsel, are you familiar with the case of Granada-Segura v. Gonzalez in the Ninth Circuit? I am not familiar offhand with that case, Your Honor. Well, in that case, we appeared to say that a statute limiting relief available to certain classes of aliens must be wholly irrational to violate equal protection standards. I am familiar with that stand. And also, you have to negate every conceivable basis upon which the Congress might want to distinguish between those who are inadmissible, in the first instance, as opposed to those who have been admitted and now are deportable. So why wouldn't Congress have a rational basis for distinguishing between those people who are not admissible at all and those who are admissible but are subject to deportation? I think, Your Honor, first of all, the BIA itself has expressly held that there is no logical distinction between those two in matter of age. But in a case such as this, Mr. Montero ---- Did the BIA say that Congress had no rational basis for enacting legislation? It did not in that case. It simply said there could be no logical basis. But I believe that would be an equivalent, in essence. And in this case, of course, Mr. Montero was in a deportation, a removal proceeding. He had pending in that deportation proceeding an application for adjustment of status. And technically, in that scenario, that is an issue of admissibility under the adjustment adjudication. But he was in a deportation proceeding and I believe substantially in the same position as anyone else who is being deported. Our third equal protection ground that Mr. Montero argued is that because for a simple, single simple possession conviction such as his, a pardon and also relief under the Federal First Offenders Act have the same virtual effect that equal protection would require him to receive the same kind of benefit. Federal First Offenders Act applies to a single, simple possession offense. And under the Garland Supreme Court case and the other cases which we have cited, the pardon would essentially render him, as they say, to the position he was before the conviction. Counsel, are you familiar with the case of Nguyen v. INS, which rejected the Garland argument? Oh, Nguyen? Yes, Your Honor. I am. Nguyen, that's Y-U-E-N? Right. Yes. In that case, there was no equal protection argument made. You also had a vastly different statute which specifically barred the effect of a pardon in a drug conviction case. But it rejected the N. Ray Garland argument nevertheless. It said that the first Federal offender statute is not equivalent to a state pardon. Yes. In Nguyen, the court did not pass on the effect of a presidential pardon because it was dealing only with a state pardon in that case. Our other argument here is that under the Gabbardine and Nguyen line of reasoning, if Mr. Montero could have received the benefit of a presidential pardon had he been prosecuted for a federal crime, that he also should be able to receive the same effect as a presidential pardon. In Lujan and Gabbardine, what the court ruled was under the Federal First Offender Act, by analogy here, that if a person were convicted under a state law and had relief under the similar expungement regime of the state, that under equal protection they should be measured by the Federal standard. And what we're arguing here is that those cases show that there should be a unity in immigration law in the standard that gives consequences for deportation, and that the Gabbardine line of cases shows that all these things should be measured against the Federal standard. Counsel, are you familiar with the Eleventh Circuit case of Belogan v. Attorney General? Yes, the case cited by the government. And what's wrong with the reasoning of that case? Well, one thing, that case specifically points out that there's no constitutional issue raised in that case. And I believe that the reasoning of the case is sound, but it does not address the constitutional equal protection arguments that we're making here. The fourth equal protection ground that we have raised here is that it's consistent, as I mentioned, with the Gabbardine line of cases that the effect of a gubernatorial pardon should be the same as the effect of a presidential pardon. That the effect of those two, that this is also consistent with the intent of Congress as set forth in Section 237, which gave the same effect to a presidential pardon and a governor's pardon. And the Department of Justice's own memo, which we cited at page 12 of our brief, disagrees with the dictum in U.N. that presidential pardon does not preclude deportation. The Department of Justice formal memo says that a presidential pardon should go to a deportation and prevent a deportation. Counsel speaking now with respect to the intent of Congress, how do you rationalize the fact that Congress in Section 1182 made no provisions whatsoever with respect to pardons? Now, dealing with those that are inadmissible, because your entire equal protection argument seems to be premised upon the fact that those that are deportable are within the same class as those who are deemed inadmissible in the first place. That's correct, Your Honor. Okay. Assuming that that argument, assuming we buy that argument, what effect then do we give to the congressional intent, as indicated by its silence in 1182, to make any provisions whatsoever to pardons, either any kind of an executive pardon, presidential or state governor? What are we to make of Congress's silence? Okay. The first thing I think I would point to, Your Honor, is the statement of the BIA in this case before this court that they consider that it's conceivable that Congress would have intended deportable and inadmissible aliens to have received equivalent treatment vis-à-vis a pardon. So the BIA considers that it is conceivable that that was Congress's intent. I recognize that your question, though, raises a serious issue, because there is silence in 1182 on that point. And I think what I would have to rely on is what I stated before, that if the BIA has said that this is conceivable, perhaps it should be remanded to them for that purpose. But the other factor that I would rely on here is the equal protection argument that someone like Mr. Montero, who is in the U.S. and was in a deportation proceeding, should be treated equally to someone else in a deportation proceeding. I want to be sure I understand your answer to Judge Wright, because earlier you told me that you thought that Belogan's reasoning was sound as far as it went, but it didn't deal with the constitutional question. But its reasoning as far as it went was to say that the silence in 1182 meant that Congress did not intend for pardons to be used in that context. So what is your position on the meaning of the statute? I believe that the silence obviously can raise an inference that Congress did not intend the same remedy in an indemnizability setting. However, I believe that perhaps to that extent, the deference should be given to the BIA's view that it is conceivable that Congress meant that, and that if the constitutional arguments are not accepted here, which we believe should prevail, equal protection arguments, that perhaps the appropriate remedy would be to remand this case to the BIA for it to decide whether or not, because it said it was conceivable but not certain, that Congress would have intended equal treatment from a pardon for both of those groups. Thank you, Counsel. You've exceeded your time, so we'll hear from the government now.  Thank you. May it please the Court. Kristen Edison on behalf of the Attorney General. Mr. Aguilera is seeking adjustment of status. Because he was charged with two grounds of inadmissibility, he's not eligible to adjust his status. Congress explicitly provided a waiver of removability based on a pardon for certain convictions. And although it's not been explored yet, in any event, the narcotics-related convictions are not covered in the grounds of removability. And Mr. Aguilera was convicted of a narcotics conviction. There's no such waiver in any event for inadmissible aliens such as Mr. Aguilera Montero. For that reason, the government believes the Board's decision should be confirmed. Counsel, what's your response to opposing counsel's suggestion that we remand this to the BIA for exploration of its inclination that there might be a conceivable intent for Congress to treat these two classes of aliens similarly? Well, I don't believe the Board – I believe the Board simply expressed, while perhaps there could be a conceivable reason, the Board wasn't authorized to make that determination, and it wasn't necessary. The Board relied on its precedential decision of in re su or su, and it was entitled to do that. But it's entitled – that decision was entitled to deference. Do you have a response at all or an opinion with respect to what I took to be counsel's assertion that Chevron deference should be afforded to this decision by the BIA? To the in re su?  Yes, deference is appropriate in that case. Congress has spoken on the issue. As you pointed out earlier, Congress was silent on the issue of whether inadmissible aliens should benefit from a waiver. As the Board – or, pardon me, as the Court of Appeals in the Eleventh Circuit pointed out in that Falligan case, if Congress intended to do so, it would have included that. Congress is – it's presumed that Congress acted with intent and understood the statutory scheme. All right. How do you address counsel's arguments, the majority of which appear to be focused on equal protection, that somehow deportable aliens are treated and entitled to greater protection, I guess, than those who are deemed inadmissible in the first place? Are they so similarly situated that they're entitled to, you know, the same protections? Well, first of all, there really shouldn't be an equal protection concern, because as pointed out, the waiver doesn't – the waiver for removability doesn't even apply to narcotics-related offenses. So no alien with a narcotics-related offense, whether deportable or inadmissible, can benefit from that waiver. So in a sense, you're saying there's really no cognizable equal protection argument to respond to. And if all aliens with this conviction are treated the same, then it's an abstract argument in this context. That's correct. I mean, the arguments really are all by analogy relating to the Federal First Offender Act, and as explained in the brief, there's really no basis for extending that analogy. I mean, really, at heart, there is no – there should be no equal protection concern. Absent any other questions from the Court, I'm happy to conserve the Court's time. Thank you. Mr. Pritchett, you used your time, but we'll give you a minute for rebuttal. Thank you very much. I would just like to comment on one aspect, which I believe was raised here, and that is that the due process and equal protection protections do apply to any alien physically in the United States, even if they came into the U.S. illegally. And that as a result of that, I think that because Mr. Monteiro in this case, who was applying for adjustment of status, was in a deportation proceeding, we believe that he should be treated equally to someone else who was in a deportation proceeding. What is your response to the government's assertion that every alien would be treated the same as this, ultimately because the original crime of conviction involved cocaine, and Congress has made clear that the only exception is for some very small amount of marijuana. So nobody would get this benefit, so he stands equal to everyone in his potentially in his situation. What is your response to that? Well, I don't believe that everyone would, that all aliens would receive that benefit. I think that is the, I guess specifically the argument is that a pardon has no helpful effect for any alien in immigration proceedings when it involves cocaine. Well, I think a pardon necessarily does have effect for an alien, say with a cocaine conviction or another kind of conviction, without question if it's a presidential pardon because you have a supremacy issue there which you did not touch. And we believe that under the logic of the Gabardine and the Lujan cases, that if a, as one of our arguments, that if a person, had he been prosecuted under Federal law, could have received a presidential pardon, that under that very same logic, if he were prosecuted under State law and received a Governor's pardon, the effect should be the same. I think I understand your argument. So what if there is no presidential pardon involved? If it's inadmissible versus deportable. No presidential pardon involved. Is there an equal protection argument to be made at that point for someone who has drug convictions? If there's no presidential pardon available for that kind of, or just? Yeah, if there's no presidential pardon involved, period. If you just have one person, a State pardon, one person is convicted of, one person is inadmissible, one is deportable, and they both have drug convictions, is there an equal protection argument to be made? I believe there is. Why? Well, I think there are a couple of grounds for that. I think one ground is that under the equal protection logic of Gabardine. If neither of them is eligible. Oh, neither is eligible for a? If a drug conviction means that there is no waiver, no adjustment of status available, what difference does it make if one is inadmissible and one is deportable? If there were no remedy whatsoever, it would not make any difference. Well, that's the government's argument. That's why I was asking you the question. Their argument is that with respect to this specific conviction involving cocaine, that Congress has provided that a pardon will never help in either context, inadmissible or removable. That's their argument. Okay. That is a part of our argument because the section 237 of the INA in the 237A2 capital A little 3 under aggravated felony applies to any alien convicted of an aggravated felony. We're talking about a drug conviction. Yes. Not the aggravated felony, the drug. Well, our argument is that a drug conviction, which is an aggravated felony, is necessarily waivable under section 237. Aggravated felony is not a crime in itself. It applies to a group of crimes, theft, murder. There are some specific provisions for drug convictions separate and apart from the aggravated felony. There is. And I think that's explainable because the section that addresses aggravated felony does not include all drug convictions. So that drug convictions, which are not aggravated felonies, would need, there needs to be another section if Congress wanted to be sure that non-aggravated felony drug convictions were also subject to deportation. But we believe the sue decision. There are some aggravated felonies that you can get waiver for. There are drug convictions that you cannot get a waiver for. That's why you have the exclusions in 237. But there are some drug convictions that are excluded from the exceptions for waiver. And we believe that 237, when it waives aggravated felonies, does waive aggravated felony drug convictions by its clear language. Any alien. Counsel, since you're fond of the BIA, in the matter of sue, that opinion stated, other removable offenses, such as controlled substance violations, are similarly not covered by the pardon waiver of section 237A2AV of the Act. Yes, Your Honor. And one of our arguments in our briefs is that matter of sue is incorrect in that dictum because 237 in the aggravated felony section says it applies to any alien convicted of an aggravated felony. And then the waiver section says it applies to aggravated felonies. So our argument is that an alien convicted of a more serious drug offense, which would be an aggravated felony, is clearly under the scope of that provision, the waiver provision, and that it violates equal protection to treat someone with a lesser offense, which is not an aggravated felony, more poorly and allow him to not have a waiver and allow the person with a more serious offense to have a waiver. I think we understand your arguments, and we appreciate the arguments of both counsel, and we will submit the case that we've just heard. Thank you. Thank you.
judges: Graber, Rawlinson, Wright